UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

GINA MARIE JONES,                                      Case No. DG 08-01404
                                                       Chapter 7
            Debtor.                                    Hon. Scott W. Dales
_____/

DEREK COOPER and AMANDA COOPER,                        Adversary Pro. No. 08-80227

            Plaintiffs,

v.

GINA MARIE JONES,

            Defendant.
_____/


## FINDINGS OF FACT AND CONCLUSIONS OF LAW


Derek and Amanda Cooper (the "Plaintiffs") seek to except a debt from discharge

under 11 U.S.C. § 523(a)(4) that arises from the Plaintiffs' demand for the return of a

$24,500.00 deposit (the "Deposit") remitted as a down-payment on the purchase of a

custom-built manufactured home in November, 2005. The Plaintiffs did not consummate

the purchase and the Defendant-Debtor Gina Marie Jones ("Defendant"),[1] to whom they

tendered the Deposit, refused to return it. Before the Defendant filed her bankruptcy

petition, the Plaintiffs obtained a judgment against her, after trial before the Honorable

Sara J. Smolenski in the 63-2 District Court for Kent County, Michigan (the "State

Court"), in the amount of $19,092.33 (the "Debt").

---

[1] The Defendant now goes by the name Gina Marie Willingham.

The parties appeared for trial on the present adversary complaint in Grand Rapids, Michigan on April 29, 2009, and the court accepted their stipulation of facts. The court also heard testimony from Derek Cooper, Gina Jones, and Bill Jones, and admitted five documents into evidence.

The court has previously determined that it has subject matter jurisdiction over the proceeding under 28 U.S.C. § 1334(a), and is authorized to enter final judgment because this dispute involves the dischargeability of a particular debt and therefore falls within the court's "core" jurisdiction under 28 U.S.C. § 157(b)(2)(I). See Pretrial Order dated October 23, 2008 (DN 10).

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52.

## I. Findings of Fact

The parties' stipulation at trial established the following material facts:

1. The Defendant is a licensed retailer of manufactured housing[2] in the State of Michigan.
2. The Defendant accepted the Deposit of $24,500.00 from the Plaintiffs on November 5, 2005.
3. The Defendant did not return the Deposit.
4. The Defendant's receipt, custody, and obligation regarding the Deposit are governed by Michigan Administrative Rule 125.1403.
5. The Plaintiffs filed a complaint against the Defendant in State Court on May 6, 2006.
6. The State Court entered judgment against the Defendant on March 6, 2007 in the amount of $19,092.33 for breach of contract damages.
7. The issue of the Defendant's compliance with Michigan Administrative Rule 125.1403 was not raised in the State Court proceedings.

---

[2] The applicable state statute and rules refer variously to "mobile homes" and "manufactured housing" and "manufactured homes," but the terms are apparently synonymous, at least for purposes of the court's ruling. See Mich. Admin. R. 125.1101(n) (defining "Home").

2

8. The Plaintiffs did not cancel the contract for the purchase of the manufactured home (the "Purchase Agreement") before November 12, 2005.

The court also admitted into evidence five exhibits, including two purporting to represent the Purchase Agreement. See Pl. Exh. 1-4; Def. Exh. A.

The court heard credible testimony from three witnesses who established additional, material facts. For example, from the testimony of Derek Cooper and Gina Jones, the court finds the Plaintiffs did not give written notice of their intent to cancel the transaction until April, 2006, when their attorney sent a demand letter.

From the testimony of Bill Jones, the court finds the Plaintiffs received a legible copy of the Purchase Agreement on November 5, 2005, which included the prescribed language regarding rescission and refund rights. In addition, the court infers from Bill Jones's testimony that as late as March 1, 2006, the Plaintiffs still intended to complete the transaction. The handwriting on Exhibit 1 corroborates this finding, in that Bill Jones agreed that if the house was not ready ninety days after closing, Jones Custom Building would pay the Plaintiffs a weekly late fee. It would appear by this additional contract term that the Plaintiffs were eager to close. As a result, and in view of the stipulation, it is clear that the Plaintiffs did not rescind the Purchase Agreement within seven days of receiving a legible copy.

The manufactured home the Plaintiffs intended to purchase was not in existence when they signed the Purchase Agreement. Instead the Defendant specially-ordered a custom-made manufactured home from the manufacturer. Indeed, the Defendant

3

herself deposited $10,000.00 with the manufacturer to procure its manufacture and delivery, a process that took approximately five months.

In April, 2006, after the Plaintiffs attempted to rescind the transaction through counsel and in writing, the manufacturer delivered the home to the Defendant's premises in Caledonia, Michigan. The Defendant refused to return the Plaintiffs' deposit. Unfortunately, but evidently unrelated to the Plaintiffs' decision to rescind, a tornado and water damage later destroyed the manufactured home. After the dispute went to trial on the Plaintiffs' claim for breach of contract, the State Court found for the Plaintiffs, and awarded contract damages against the Defendant in the amount of $19,092.33.

## II. Preclusive Effect of the State Court's Judgment

Defendant raises the doctrine of *res judicata* and collateral estoppel as a threshold issue barring relief. As noted in the court's Pretrial Order dated October 23, 2008, in the order denying the summary judgment motion, and in the parties' stipulation, the parties tried this matter before the State Court and the Plaintiffs prevailed. The Defendant argues that the State Court's judgment, premised entirely on a breach of contract theory, precludes the Plaintiffs from now asserting a breach of fiduciary duty because under Michigan's compulsory joinder rule, the Plaintiffs were obligated to assert their fiduciary breach claim at the same time they asserted their breach of contract claim. See M.C.R. 2.203(A). Consequently, according to the Defendant, the Plaintiffs' failure to raise the breach of fiduciary duty issue in State Court precludes them from raising it now in this nondischargeability proceeding.

4

In contrast, Plaintiffs contend that Michigan's permissive joinder rule and a variety of federal cases preserved their right to seek a judgment excepting the Debt from discharge, notwithstanding their failure to raise the fiduciary issues in State Court.

The Defendant's argument confuses the doctrine of *res judicata* or (more modernly) "claim preclusion" with the doctrine of collateral estoppel or "issue preclusion." In <u>Brown v. Felsen</u>, 442 U.S. 127, 138-39 (1979), the Supreme Court held that the doctrine of *res judicata* does not apply in bankruptcy dischargeability proceedings. The Supreme Court later explained <u>Brown</u> as follows:

> Congress also intended to allow the relevant determination (whether a debt arises out of fraud) to take place in bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns "are not directly in issue and neither party has a full incentive to litigate them."

<u>Archer v. Warner</u>, 538 U.S. 314, 321 (2003) (<u>citing</u> <u>Brown</u>, 442 U.S. at 134); <u>see also</u> <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373, 386 (1985) (acknowledging that <u>Brown</u> found "congressional intent that state judgments would not have claim preclusive effect on dischargeability issue in bankruptcy"). After reading <u>Brown</u>, <u>Marrese</u>, and Archer, among other authorities, the court finds that the doctrine of *res judicata* does not bar the Plaintiffs from seeking to except the Debt from discharge.

The Supreme Court acknowledged, however, that collateral estoppel or issue preclusion does apply in nondischargeability actions, <u>Grogan v. Garner</u>, 498 U.S. 279 (1991), and that, under 28 U.S.C. § 1738, the issue-preclusive effect of a state court judgment depends on the state's law regarding issue preclusion. <u>Marrese</u>, 470 U.S. at 380; <u>Calvert v. Calvert (In re Calvert)</u>, 105 F.3d 315, 320 (6th Cir. 1997). As the court

5

explained in Vogel v. Kalita (In re Kalita), 202 B.R. 889 (Bankr. W.D. Mich. 1996), unless an issue is actually litigated and essential to a Michigan judgment, the judgment is "not conclusive as to questions which might have been but were not litigated in the original action." Kalita, 202 B.R. at 905. Following this analysis, and based upon the stipulation that the Plaintiffs did not assert fiduciary breach issues in the State Court, the issue of whether the Defendant breached her fiduciary duty is a proper subject for this court's consideration, notwithstanding the entry of the State Court's judgment after trial. It was not actually litigated.

## III. Section 523(a)(4) and Fiduciary Defalcation

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." See 11 U.S.C. § 523(a)(4). A plaintiff seeking to except a debt from discharge as the product of fiduciary fraud or defalcation must establish the following elements by a preponderance of the evidence:

(1) a fiduciary relationship arising out of an express or technical trust;

(2) a breach of that fiduciary relationship;

(3) and a resulting loss.

See R.E. America, Inc. v. Garver (In re Garver), 116 F.3d 176, 178 (6th Cir. 1997). The concept of "resulting loss" imports into the calculus the familiar common law concept of causation.

In ruling on the Defendant's summary judgment motion, the court previously concluded that the Defendant held the Deposit as a fiduciary within the meaning of 11 U.S.C. § 523(a)(4). See Order Denying Defendant's Motion for Summary Judgment,

6

dated March 2, 2009 (DN 31). To summarize that ruling, under the Mobile Home Commission Act, M.C.L. § 125.2301 *et. seq.*, and Michigan Administrative Rule 125.1403, the Deposit the Plaintiffs tendered to the Defendant comprised the *"res"* of the statutory trust upon which the Plaintiffs premised their fiduciary breach claim.  The issue for decision, therefore, is whether the Defendant breached her obligations with respect to that statutory trust and the Deposit, and if so, whether the breach caused the Plaintiffs' loss.  This determination depends upon whether the Defendant complied with the Mobile Home Commission Act and the administrative rules promulgated pursuant to the Act. See M.C.L. § 125.2324; Mich. Admin. R. 125.1403.

With respect to consumer deposits, the Act provides that a manufactured home dealer, such as the Defendant, shall not:

> (b) Misapply consumer deposits on a mobile home  . . .
>
> (c) Fail to place deposits, down payments, or similar payments for the purchase or right to purchase a mobile home in a separate escrow account subject to return upon cancellation of the purchase order by the prospective purchaser under the rules or orders as the commission promulgates or issues unless the dealer shall post a bond or a deposit of cash or securities for protection of these payments in an amount acceptable to the commission.

M.C.L. § 125.2324.  Given the Act's reference to the rules of the manufactured housing commission, the court must also consider Michigan Administrative Rule 125.1403, which provides in relevant part as follows:

> (4)  A retailer shall refund to a consumer the total amount of a consumer deposit on the purchase of a home not more than 15 banking days after a request for financing has been rejected by the lending institution or if the consumer cancels the purchase agreement before the binding date under subrule (13) of this rule.

7

> The consumer shall notify the retailer, in writing, of his or her intent to cancel the purchase agreement. The notification shall be delivered to the retailer by certified mail postmarked before the close of the business day on the binding date to be eligible for return of the consumer deposit. A retailer has no obligation to refund the consumer deposit if the consumer cancels the purchase agreement of a new or pre-owned home after the binding date. As used in this subrule, "binding date" means either 7 days after the date that a purchaser of a home receives a legible copy of the executed purchase agreement or the time at which the purchase agreement is executed if an application for certificate of manufactured home ownership is executed within 7 days.

Mich. Admin. R. 125.1403(4). Although subrule (1) generally requires a retailer to hold consumer deposits[3] until closing, the rule specifically excuses a retailer from returning the deposit "if the consumer cancels the purchase agreement of a new or pre-owned home after the binding date." Id. By prescribing precise language to be included in a purchase agreement so that the consumer understands his or her right to cancel, the drafters of the rule gave the purchaser a very short-lived right to a refund of the deposit, assuming the retailer gives the prescribed notice. See Mich. Admin. R. 125.1403(13).

At first glance, it is difficult to square the manufactured home retailer's obligation to hold a consumer deposit in escrow until closing with language in the same rule that excuses the retailer from refunding the deposit if the purchaser cancels after the binding date, but the court must endeavor to do so. Compare Mich. Admin. R. 125.1403(1) with id. 125.1403(4) & (13). Having carefully reviewed the rule, the court finds that Michigan

---

[3] A "consumer deposit" means "all payments of cash or by personal check, money order, certified or cashier's check, credit card or similar instrument, or other collateral or security paid to a retailer prior to closing by the consumer for the right to purchase a home subject to return upon cancellation of the purchase agreement." Mich. Admin. R. 125.1101(1)(j).

8

Administrative Rule 125.1403 imposes a general obligation to retain the security deposit until closing, but a retailer may shorten the escrow period by including in the purchase agreement the statutory rescission notice as prescribed in Michigan Administrative Rule 125.1403(4) and (13), and delivering a legible copy of the purchase agreement containing the language to the purchaser before accepting the deposit. Stated differently, if the retailer uses a purchase agreement that fails to contain the statutory rescission notice, the retailer must retain the deposit until closing; if the retailer uses a purchase agreement that contains the rescission notice as prescribed, the retailer is not obligated to return the deposit (and presumably is discharged from segregating it) if seven days pass after delivery of a legible copy (including the prescribed notice) and the purchaser fails to give written notice of rescission by certified mail.

In order to cancel the purchase agreement in a manner entitling the purchaser to a refund of the consumer deposit, the purchaser must give written notice of the cancellation by certified mail, before the "binding date," which the rule further defines as "either 7 days after the date that a purchaser of a home receives a legible copy of the executed purchase agreement or the time at which the purchase agreement is executed if an application for certificate of manufactured home ownership is executed within 7 days." The Plaintiffs offered no evidence regarding the execution of any application for certificate of title, so the court finds that the "binding date" with respect to the Purchase Agreement was 7 days after the Plaintiffs received a legible copy of that document, or November 12, 2005.

The court acknowledges that this reading of the rule gives relatively modest protection to manufactured home purchasers, but believes that the construction is

9

consistent with the enabling statute which, fairly read, imposes the obligation to segregate deposits only to protect the buyer's right to rescind, not to protect against a retailer's breach of contract. See M.C.L. § 125.2324(4) (obligating retailer to segregate deposits "subject to return upon cancellation of the purchase order by the prospective purchaser under the rules or orders as the commission promulgates").

In the present case, because the parties stipulated that the Plaintiffs did not rescind before November 12, 2005, the question becomes whether the Defendant effectively absolved herself of the duty to return the Deposit by properly giving the Plaintiffs the prescribed statutory rescission notice. From the exhibits admitted at trial, and the testimony of Bill Jones and Gina Jones, the court finds that the Defendant delivered a legible copy of the Purchase Agreement on November 5, 2005. See Exhibit A. That agreement contained the specific language, conspicuously in red, eight point capitalized type, advising the Plaintiffs of their rather limited right to cancel the agreement. The parties' stipulation establishes that the Plaintiffs did not cancel the Purchase Agreement before the "binding date" of November 12, 2005.

Under the applicable rule and the enabling statute, Defendant was under no obligation to return the Deposit after November 12, 2005, and if she was no longer obligated to return the Deposit, she was no longer obligated to segregate or account for it. It remains true, as the court has indicated on several occasions in the comparable setting of nondischargeable debts under the Michigan Building Contract Fund Act, M.C.L. § 570.151, that once the Plaintiff establishes the existence of a fiduciary relationship by proving the Defendant's receipt of a trust *res*, the burden shifts to the Defendant to account for the funds. Cappella v. Little (In re Little), 163 B.R. 497, 500-01

10

(Bankr. E.D. Mich. 1994). At trial, the only evidence tending to establish any accounting for the Deposit was testimony that the Defendant paid $10,000.00 to a manufactured home manufacturer to special order the home at issue. Presumably the money came from the Deposit, but the court cannot tell for certain. Strictly speaking, the Defendant failed to carry her burden of accounting for the trust *res*.

The fiduciary duty of a retailer under the Mobile Home Commission Act, however, differs from the duty of a contractor under Michigan Building Contract Fund Act in this important respect: the contractor must hold the building contract fund in trust until all laborers, subcontractors and materialmen are paid in full,[4] but a manufactured home retailer who tenders a purchase agreement that contains the notice of rescission need only hold the deposit in trust until the "binding date" passes without rescission. If the retailer later defaults, she may be held accountable for contract damages, but she is not obligated to return the consumer deposit.[5]  In the present case, therefore, even assuming the Defendant failed to keep the Deposit "in escrow"[6] for the seven days following November 5, 2005, she was relieved of the duty to segregate on November 13, 2005, and the Plaintiffs did not rescind the transaction until long after her fiduciary duty expired.  Under the circumstances, the Plaintiffs' damages did not result

---

[4]  See DiPonio Constr. Co. v. Rosati Masonry Co., 631 N.W.2d 59, 62 (Mich. Ct. App. 2001).

[5]  See M.C.L. § 125.2324; Mich. Admin. R. 125.1403(4). It appears to the court that the statute, as implemented in the rules, provides extremely limited protection to consumers in cases in which the retailer gives the prescribed notice. The court is not at liberty to rewrite the rules, but must enforce them as written, respecting the accommodation of competing interests and policies that the statute and rules necessarily embody.

[6]  Manufactured home deposits are not truly held in escrow because no independent stakeholder is involved in holding them as an agent for the parties pursuant to contract. See Smith v. First Nat. Bank & Trust Co. of Sturgis, 440 N.W.2d 915, 918 (Mich. Ct. App. 1989) (explaining agency nature of escrow arrangement). Rather, the manufactured home retailer is supposed to segregate the deposit from her own funds in a designated checking account.  The drafters of the rule used the term "escrow" loosely, but probably recognized that a true escrow would increase the costs of manufactured home sales transactions, given that escrow agents rarely work for free.

11

from any breach of fiduciary duty, though they did flow from the Defendant's breach of contract, as the State Court concluded when it entered its judgment.

## IV. Conclusion

Accordingly, the court finds that the Debt represented by the judgment is dischargeable under 11 U.S.C. § 727. Plaintiffs may share in whatever property the trustee distributes under 11 U.S.C. § 726, but they may not collect the Debt as a personal obligation of the Defendant. The court will enter a separate judgment to this effect.

Date: May 7, 2009

Scott W. Dales
United States Bankruptcy Judge